UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 18-10391-RGS

UNITED STATES OF AMERICA

v.

DEREK SHEEHAN

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS
AND MOTION FOR A *FRANKS* HEARING

January 28, 2020

STEARNS, D.J.

Defendant Derek Sheehan, who is charged with three counts of sexual exploitation of children (child pornography), 18 U.S.C. §§ 2251(a) and (e), seeks to suppress evidence seized under a Massachusetts state search warrant issued by a Justice of the Hingham District Court.[1] In the law of search and seizure there is a strong preference for the "informed and deliberate determinations of magistrates." *United States v. Lefkowitz*, 285 U.S. 452, 464 (1932). In recognition of this preference, courts reviewing warrants "will accept evidence of a less 'judicially competent or persuasive

---

[1] There were in fact two separate state warrants. Pursuant to the first warrant, officers seized a cell phone and various other electronic devices from Sheehan's home. The second warrant authorized police to examine the contents of the devices. Both warrants are at issue.

character than would have justified an officer in acting on his own without a warrant.'" *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948). Warrants are not to be subjected to niggling scrutiny but are to be tested in a "common-sense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 109 (1965). A "grudging or negative attitude" on the part of a reviewing court is discouraged. *Id.* at 108-109; *see also United States v. Johnson*, 78 F.3d 1258, 1262 (8th Cir. 1996) ("absolute syllogistic precision" is not required).

Whether a challenged warrant was issued on a sufficient showing of probable cause is a question of law for the determination of the reviewing court. *Beck v. Ohio*, 379 U.S. 89, 96 (1964). Probable cause means "reasonable cause," something significantly less exacting than "more likely than not" or "by a preponderance of the evidence." *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir. 1979). Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (*plurality opinion*) (internal citation omitted). As the probable cause inquiry begins and ends with the four corners of the affidavit

supporting the search warrant application, *United States v. Vigeant*, 176 F.3d 565, 569 (1st Cir. 1999), no evidentiary hearing was held. The court did, however, hear oral argument from counsel involved on two separate occasions, September 20, 2019, and after an order for additional briefing, on November 15, 2019.

FACTUAL BACKGROUND

**The first warrant**

The search warrant affidavit sworn by Norwell police officer Kayla Puricelli on August 16, 2018, sets out the following pertinent facts. On June 28, 2018, Puricelli interviewed a woman who had presented herself at the Nowell police station to report a sexual assault on her younger brother, allegedly committed by Sheehan. In looking through her brother's iPhone (which she had brought with her), she stated that she had seen references to a Massachusetts State Police file and a purported email exchange between Sheehan and Rick Phelps, the Norwell police school resources officer. Later that day, Puricelli spoke to the mother of a second boy who reported that she had seen a reference to the same exchange of emails between Sheehan and "Phelps" on her son's phone. On June 30, 2018, Puricelli spoke to the father of the first child who told her that Sheehan had given him a copy of the supposed email exchange with Phelps. Sheehan told the father that Phelps had contacted him regarding the investigation of a gossipy exchange of texts

between his son and the second boy accusing Sheehan of being a pedophile. In the email exchange, Phelps purports to tell Sheehan that the matter had been resolved and that he had been exonerated.

On July 9, 2018, a SAIN interview was held with the first boy at the Plymouth Children's Advocacy Center. Based on what was learned in that interview, Puricelli and three other officers spoke again to the second boy's mother. She stated that Sheehan had told her that he had been investigated by the State Police "because a kid made up an untrue accusation of him being a pedophile, but that he was cleared be the State Police of any wrong doing (sic)." Dkt. #68-1 at 8. Sheehan had also shown her a file with a State Police logo on its cover which contained copies of the accusatory text messages exchanged by the two boys. On August 1, 2018, Puricelli, accompanied by the other three officers, interviewed the father of a third boy whose name had also come up during the SAIN interview. The father stated that Sheehan had told him that he had been falsely accused, but later cleared after an investigation conducted by Phelps and the State Police. Sheehan had shown him a photo of the file displaying the logo of the State Police on its cover.

On August 14, 2018, the officers met again with the mother of the second boy. She stated that her husband had been contacted earlier in the spring by Sheehan who had told him that he had "to inform him of something that could not wait." *Id.* According to the mother, Sheehan had shown her

husband a copy of a "State Police Report" containing the texts between the two boys. The officers then spoke with her son who told them that Sheehan had created the iPhone account that the boys had used for texting. In one of the text messages the boys referred to Sheehan as a "literal child rpst (sic)." Dkt. #68-1 at 9.

On August 17, 2018, the officers spoke with the second boy in presence of his mother. He confirmed that Sheehan had created the iPhone account for his friend (the first boy), and that Sheehan regularly "spied" on his friend's text messages. He also stated that Mac desktop computer in his home office, "a bunch of laptops all over his home," as well as an iPhone, an iPad, monitors, and "a big server in his basement." *Id.* The boy's mother had also told the police that she had spoken by telephone earlier that week with Sheehan's wife (at her request). Mrs. Sheehan told her that the police were investigating Sheehan and "trying to turn her . . . against her husband." *Id.* Mrs. Sheehan also stated that the first boy's accusation of having been assaulted by Sheehan the summer before was a lie. Sheehan then joined the conversation and urged her to tell the police that he had done nothing wrong.

According to Puricelli, the State Police was able to corroborate, by way of administrative subpoenas served on Google, that Sheehan had had created the account used by the first boy for texting and that he had also created the rickphelps21 Gmail account purportedly owned by Officer Phelps.

Based on the facts summarized above, Puricelli concluded that

probable cause existed to search Sheehan's home for evidence related to the state crimes of Impersonation of a Police Officer, Witness Interference & Obstruction, Unauthorized Access to a Computer, and Identity Fraud. The warrant application specifically asked for permission to seize computers, tablets, cellular telephones, and media storage devices, all of which was granted by the issuing Justice of the Hingham District Court.

**The Second Warrant**

The second warrant was issued on August 29, 2018, on Officer Puricelli's application, also by the Hingham District Court.[2] Puricelli sought permission, which was granted, to search the contents of the fifteen electronic storage devices that had been seized from Sheehan's home.[3] The stated purpose of the search was to seize evidence of possession by Sheehan of child pornography in violation of Mass. Gen. Laws, ch. 272, § 29C. After

---

[2] A third warrant was issued by a U.S. Magistrate Judge on September 19, 2018, on the application of Lisa Crandall, a Special Agent of the Federal Bureau of Investigation, authorizing a second search of Sheehan's home. That warrant is not being contested by the instant motion to suppress.

[3] Although Puricelli did not specifically incorporate by reference her first affidavit, she four times listed the docket number of the first warrant (1858SW0035). She also disclosed that the first application involved the seizure of the same items as named in the second, although in an investigation of different crimes. Notably, the second warrant was given the next successive docket number to the first (1858SW0036). It may be reasonably inferred that the second judge would have been aware of the earlier warrant issued by his court.

relating information regarding the execution of the first search warrant and the arrest of Sheehan at his home, Puricelli stated that she had been told by the State Trooper, who had been tasked with downloading files from Sheehan's iPhone, that he had encountered pictures that he believed to be child pornography. Specifically, the Trooper stated that he had observed "images of prepubescent penises that lacked pubic hair." Dkt. #68-2 at 5.

DISCUSSION

As the court noted at the initial hearing, the parties had largely briefed the motion to suppress on the issue of whether the warrant complied with Massachusetts state law. It is true, as Sheehan contends, that a federal court evaluating the admissibility of evidence seized pursuant to a state search warrant will look to whether the supporting affidavits provided a "substantial basis" for concluding that probable cause existed that evidence related to the (state) crimes under investigation would be found. *United States v. Cordero-Rosario*, 786 F.3d 64, 69 (1st Cir. 2015). *See Gamble v. United States*, 139 S. Ct. 1960, 1979 (2019) ("Once the Fourth Amendment was held to apply to the States as well as the Federal Government, however, the silver platter doctrine was scuttled. . . . Now the fruits of unreasonable state searches are inadmissible in federal and state courts alike."). *See also Elkins v. United States*, 364 U.S. 206, 213 (1960). On the other hand, it is

well established that evidence gathered in conformity with federal law, whether by state or federal authorities, "is admissible in federal court proceedings *without regard to state law*." *United States v. Sutherland*, 929 F.2d 765, 769 (1st Cir. 1991), quoting *United States v. Little*, 953 F.2d 1420, 1434 (9th Cir. 1984). This is true even when the evidence "is obtained pursuant to a state search warrant or in the course of a state investigation." *United States v. Mitro*, 880 F.2d 1480, 1485 n.7 (1st Cir. 1989).

The reason for the rule is explained by the ancient doctrine of dual sovereignty reaffirmed in *Gamble*. Significant differences exist between the Supreme Court's interpretation of the Fourth Amendment and the Supreme Judicial Court's more rights-oriented interpretation of the analog article 14 of the Massachusetts Declaration of Rights. One prominent and relevant example entails the applicability of the "good faith mistake" doctrine. *Compare United States v. Leon,* 468 U.S. 981 (1984) (recognizing a good faith exception) *with Commonwealth v. Hernandez*, 456 Mass. 528, 533 (2010) (rejecting the exception as a matter of state law). In another significant respect state and federal law differ in that Massachusetts does not follow the flexible "totality of the circumstances" test of probable cause approved in *Illinois v. Gates*, 462 U.S. 213 (1983), but rather the "more meticulous" standard set out in *Aguilar v. Texas*, 378 U.S. 108 (1964), and

*Spinelli v. United States*, 393 U.S. 410 (1969). See *Commonwealth v. Upton (II)*, 394 Mass. 363, 374 (1985).

A federal court is also not bound by procedural differences between state and federal law relating to the formalities of the warrant process. Evidence gathered under a state warrant will be admitted in federal proceedings if the warrant substantially complies with federal due process requirements; strict adherence to Fed. R. Crim. P. 41(a) is not required. *United States v. Soule*, 908 F.2d 1032, 1038-1039 (1st Cir. 1990).

**Probable Cause: The First Warrant**

Sheehan's principal argument is that Puricelli's initial affidavit failed to establish probable cause with respect to each of the state crimes she listed as the object of the investigation. At issue are Impersonation of a Police Officer, Mass. Gen. Laws ch. 268, § 33; Witness Interference & Obstruction of Justice, Mass. Gen. Laws ch. 268, § 13B; and Unauthorized Access to a Computer, Mass. Gen. Laws ch. 266, § 120F.[4]

---

[4] Officer Puricelli also specified Identity Fraud, Mass. Gen. Laws ch. 266, § 37E, as a target crime. Identity fraud or theft under Massachusetts law requires proof of four elements: "that a defendant (1) posed as another person; (2) did so without that person's express authorization; (3) used that other person's identifying information to obtain, or attempt to obtain, something of value [including identity documents]; and (4) did so with the intent to defraud." *Commonwealth v. Giavazzi*, 60 Mass. App. Ct. 374, 376 (2004) (internal citation omitted). The theory on which Puricelli proceeded

9

Impersonation of a police officer under Massachusetts law requires proof that a person falsely pretended to be a police officer and acted as such or used his apparent authority to command another person to aid or assist him in a matter pertaining to the official duty of an officer. Although the court (and the parties) are unaware of any Massachusetts appellate case discussing the elements of the crime, other states with similar statutes require that the impersonation must be done with a deliberate or fraudulent intent to induce reliance on the impersonator's pretended acts. *See, e.g.*, California Penal Code § 538d(a) ("fraudulently impersonating . . . or of fraudulently inducing the belief that he or she is a police officer"); Arizona Criminal Code § 13-2411(A) ("intent to induce another to submit to the person's pretended authority or to rely on the person's pretended acts").[5]

---

was that Sheehan posed as Officer Phelps in part to deflect a potential prosecution. However, some five months before she presented her affidavit, the Supreme Judicial Court had redefined a "thing of value" to mean "something that has a market or monetary value." *Commonwealth v. Escobar*, 479 Mass. 225, 227, 229 (2018) (avoiding a criminal prosecution is not a "thing of value" within the meaning of the Massachusetts statute). Neither Puricelli nor the Hingham Clerk-Magistrate appear to have been aware of the change in the law. The government concedes that the fourth element of identity theft was not satisfied but suggests that the "good faith" exception should apply. Gov't.'s Br. at 15-16. As I find that probable cause was established with respect to three of the other target offenses, there is no compelling reason to reach the issue.

[5] The closest analogous federal criminal statute, 18 U.S.C. § 912, adds

Puricelli's affidavit, while admittedly not a literary masterpiece, lays out the steps that Sheehan took to assume the identity of Officer Rick Phelps as part of a scheme to deflect parental complaints by the parents of the boys described in the affidavit that might trigger an actual police investigation. Sheehan created a phony Gmail account in Phelps's name and then fabricated an email exchange with himself in which Phelps purportedly exonerates Sheehan of any sexual impropriety involving the boys. Sheehan then shared this fictious email chain with the boys' parents (the father of the first boy, the father and mother of the second boy, and the father of the third boy), supposedly corroborated by a phony Massachusetts State Police "report" cobbled up by Sheehan, in an elaborate effort to convince the parents that the boys were lying about his sexual misdeeds.[6] In the totality of the circumstances, the affidavit establishes probable cause that Sheehan deliberately and falsely represented himself to be Officer Phelps and that

---

an element missing from the state statute, the demanding or obtaining something of value.

[6] As the government notes, Sheehan concedes the impersonation of Officer Phelps. I agree with the government that his argument that he did not use an "official" Norwell Police Department email account in doing so is a distinction without a difference. See Gov't.'s Br. at 10.

11

evidence of the impersonation would be found stored in his electronic devices, specifically his phone and computers.

The Massachusetts witness intimidation statute, M.G.L. c. 268, § 13B, has gone through several modern permutations. In the current version, as amended most recently in 2018, the statute punishes three types of conduct undertaken with the intent to interfere with the judicial process: (1) causing or threatening to cause physical or emotional injury to any person protected by the statute or doing harm to his or her economic interests and property; (2) the offer of a gift or anything of value as a *quid pro quo*; or (3) "mislead[ing], intimidate[ing], or harass[ing] another person who is a: (A) witness or potential witness; (B) person who is or was aware of information, records, documents or objects that relate to a violation of a criminal law . . . with the intent to or with reckless disregard for the fact that it may; (1) impede, obstruct, delay, prevent or otherwise interfere with: a criminal investigation at any stage . . . ." It is the third branch component (misleading with the intent to interfere) that is at issue here.

Under section 13B, the Commonwealth is not required to prove that a crime had actually occurred – only the possibility that it had or, alternatively, that an investigation had already begun. *Commonwealth v. Fragata*, 480 Mass. 121, 124-125 (2018); *Commonwealth v. Garcia*, 95 Mass. App. Ct. 1, 8

(2019). The term "potential witness," as used in the current and previous iteration of the statute, includes any person who has or who might possibly be called upon to testify in a judicial proceeding. *Commonwealth v. Burt*, 40 Mass. App. Ct. 275, 277-278 (1996). By using the word "potential," the statute includes persons who *might* have witnessed criminal conduct; there is no requirement that the Commonwealth prove actual knowledge on the witness's part. *Fragata*, 480 Mass. at 125-126. "It is enough that the jury reasonably conclude from the surrounding circumstances that it was likely that the victim would furnish to an official investigating authority information pertaining to the crime and that the defendant intended to discourage such communication." *Commonwealth v. King,* 69 Mass. App. Ct. 113, 121 (2007). Finally, the Commonwealth is not required to show that a criminal investigation had commenced or was ongoing or that the victim was furnishing information to the authorities at the time the intimidating act was undertaken. *Id.*[7]

Here there is every reason to believe (probable cause plus) that Sheehan's efforts to persuade the parents (in the case of the second child with

---

[7] I have set out Massachusetts law in perhaps more detail than necessary as I agree with the government that the Sheehan's restrictive interpretation of section 13B is largely based on case law interpreting prior, less expansive iterations of the statute. See Gov't.'s Br. at 12-13.

13

the aid of his wife) that he had been exonerated from any wrongdoing involving their children was an attempt, however clumsy, to mislead and dissuade them from initiating and cooperating with a police investigation of his misconduct.

The Massachusetts statute criminalizing unauthorized access to a computer, Mass. Gen. Laws, ch. 266, § 120F, states:

> Whoever, without authorization, knowingly accesses a computer system by any means, or after gaining access to a computer system by any means knows that such access is not authorized and fails to terminate such access, shall be punished by imprisonment in the house of correction for not more than thirty days or by a fine of not more than one thousand dollars, or both.
>
> The requirement of a password or other authentication to gain access shall constitute notice that access is limited to authorized users.

Here as related in the affidavit, Puricelli was told by the second boy that Sheehan had created a Gmail account for the first boy (the alleged victim of the assault) and that Sheehan "spied regularly" on the boy's text messages using a desktop computer and "a bunch of laptops all over his home." It may be that Sheehan was acting with the boy's knowledge and permission in eavesdropping on his text conversations, but that is an issue of fact that does not detract from a finding of probable cause. *See United States v. Ciampa*, 793 F.2d 19, 22 (1st Cir. 1986) ("The standard of probable cause is the

14

probability, not *prima facie* showing, of criminal activity.").

**Probable Cause: The Second Warrant**

Sheehan's complaint with respect to the second warrant is based on dicta in *United Stats v. Brunette*, 256 F.3d 14 (1st Cir. 2001), also a child pornography case, which he reads to require either the attachment to the affidavit of the allegedly obscene images or a written description in *Lady Chatterley* detail, *viz*.

> [D]oes a given image fall within the statutory definition of child pornography? Only if there is probable cause to believe so may a search warrant issue. A judge cannot ordinarily make this determination without either a look at the allegedly pornographic images, or at least an assessment based on a detailed, factual description of them.

*Id.* at 18.

In *Brunette*, the affiant, rather than describe the images, attempted to parrot the language of the statute ("a prepubescent boy lasciviously displaying his genitals"), a description that that the Court dismissed as a mere "legal assertion." *Id.* at 17.[8] By contrast, Puricelli's incorporation of what the State Trooper reported ("images of prepubescent penises that lacked pubic hair") is not a mouthing of statutory formulation, is far more

---

[8] The *Brunette* Court ultimately declined to suppress the images, invoking the good-faith exception. *Id.* at 19-20.

15

graphic than the language in *Brunette*, and is attributed to the first-hand visual inspection and determination of the State Trooper tasked with downloading the images.

That said, the First Circuit's suggestion of what the government fairly describes as a "best practice," *see United States v. Syphers*, 426 F.3d 461, 467 (1st Cir. 2005), is not a constitutional mandate and is not binding on state courts as a matter of comity. *See United States v. Morel*, 922 F.3d 1, 11 (1st Cir. 2019) ("The 'best practice' judicial gloss cannot be imposed onto state courts.").[9]

**Other Warrant Issues**

Sheehan's catch-all objections to the warrant can be dealt with summarily. (1) The claim that the affidavit supporting the first warrant failed to establish a "nexus" between his home and the likelihood that evidence of the target crimes would be found there is rebutted by what the second boy told Puricelli, that Sheehan had a "Mac desktop computer in his home office, "a bunch of laptops all over his home," as well as an iPhone, an iPad, monitors, and "a big server in his basement." Given that the three

---

[9] To the best of my knowledge, no Massachusetts appellate court has ever applied the First Circuit's "best practice" rule in a child pornography search case.

target crimes for which probable cause was established involved email communications, real and fabricated, computer surveillance, and the mock-up of a supposed police report, it was highly probable that corroborating evidence would be found stored in the devices. (2) The first warrant was not overbroad. The seizing authority was specifically limited by the magistrate to computer equipment, media storage devices, direct evidence of the targeted crimes, and documents showing possession and control of the target premises. (3) The execution of the warrant did not exceed its authorized scope as demonstrated by the items listed in the warrant return filed with the issuing court.[10]

**Motion for a *Franks* Hearing**

To be entitled to a *"Franks"* hearing, a defendant must make a "substantial preliminary showing" that an affidavit contains intentionally false or recklessly untrue statements that are material to a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-156, 170 (1978). A showing of simple factual error in an affidavit is insufficient to trigger a *Franks* hearing. *United States v. Monaco*, 700 F.2d 577, 580 (10th Cir.

---

[10] Sheehan has no standing to object to the seizure of an iPhone from his wife's personal possession, if such a thing happened. *See Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980).

1983); *United States v. Baldwin*, 691 F.2d 718, 720 n.1 (5th Cir. 1982). The reckless omission of material information from the affidavit may also raise a *Franks* issue. *United States v. Rumney,* 867 F.2d 714, 720 (1st Cir. 1989); *cf. United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) ("[A]n affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information.").

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks*, 438 U.S. at 171.

If a hearing is warranted, the defendant must prove the knowing falsity or recklessness of the affiant's statements by a preponderance of the evidence. *Id.* at 156. The defendant must also show that any deliberately false or reckless statement was material to the determination of probable cause. If such a showing is made the offending statement is excised from the affidavit, which is then reexamined for probable cause. *Id.*, at 171-172; *United*

*States v. Veillette*, 778 F.2d 899, 903-904 (1st Cir. 1985); *see also Doescher v. Estelle*, 666 F.2d 285, 288 (5th Cir. 1982) (evidentiary hearing properly denied where, even if all challenged material was excised, the affidavit demonstrated probable cause); *United States v. Alicea*, 205 F.3d 480, 487 (1st Cir. 2000) (*Franks* hearings "are the exception, not the rule" given the rigorous threshold a defendant must meet to be entitled to a hearing).

Sheehan challenges three aspects of Puricelli's affidavit: (1) that the affidavit includes information that is not reflected in a written report of the interview of the second child; (2) that Puricelli omitted information about whether the first child knew that Sheehan was able to access his Gmail account; and (3) that Puricelli omitted a first-hand description of the State Police report. None of these niggles amounts to a "substantial preliminary showing." There is no reason why Puricelli needed stick verbatim to a written report of the second child's interview, a report that as the government points out, is identified by the Trooper who filed it as "a brief summary," especially given the fact that, as the affidavit makes clear, that Puricelli, contrary to defendant's contention, was physically present during the interview. Whether the first child had given permission to Sheehan to access his Gmail account (or had the ability to do so), as previously explained, has no bearing on the finding of probable cause. Finally, I am at a loss to

19

understand what purpose would have been served by the incorporation in the affidavit of a "first-hand" description of the fabricated State Police Report.[11]

## ORDER

For the foregoing reasons, the motion to suppress is <u>DENIED</u>. The motion for a *Franks* hearing is also <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____
**UNITED STATES DISTRICT JUDGE**

---

[11] In her affidavit, Puricelli stated that a picture of the "Report" given to one of her fellow investigators by the father of the third boy (who had received it from Sheehan) showed "the Massachusetts State Police emblem on the cover, with tabs dividing the sections of the 'report.'" Dkt #68-1 at 8.