UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETT

UNITED STATES OF AMERICA

v.                                          DOCKET NO: 1:18-CR-10391-RGS

DEREK SHEEHAN

SENTENCING MEMORANDUM OF DEREKSHEEHAN

Introduction

This Memorandum is submitted to assist this Honorable Court as it determines the most appropriate sentence for the crime for which Derek Sheehan has pleaded guilty. As will be demonstrated, the undersigned suggests that a sentence of 180 months or fifteen years with supervised release will best meet the interests of justice in this matter. Sheehan, age 51, has been convicted of sexual exploitation of a minor in violation of Title 18 U.S.C. § 2251. Mr. Sheehan submits the enclosed memorandum and relies in part on the personal and biographical section of the Probation Department's Presentence Investigation Report.

The undersigned states that Derek is worthy of the opportunity to demonstrate to this Honorable Court, that he can be rehabilitated, and through his extensive support system of family, and most importantly to himself, that he can positively impact his family.

Brief Synopsis

Derek was born in Boston, Massachusetts to a blue collar family. He witnessed serious domestic abuse of his mother by his father as a young child. He is one of three children and has a brother and twin sister. At a young age his father left his mother. He was raised by his mother and stepfather in Rockland, Massachusetts. He attended Rockland public schools and graduated Rockland High School in 1988 where he lettered and excelled on its varsity football team.

1

Upon graduation he joined the United States Army serving in its reserve and national guard units.  In 1990, he transitioned to the United States Marine Corp where he served on active duty for four years and two additional years.  He was Honorably Discharged in 1996 at the rank of Sergeant.  During his active-duty service Derek was deployed to many countries in the Mediterranean and Middle East.  Many of these deployments were combat theater operations including missions in Northern Iraq post Desert Storm and in Somalia.

During reserve time is his military service he attended college, ultimately graduating from the University of Florida.  Derek returned to Boston and began working at Oracle, Incorporated in 1998.  He excelled at this company and prospered as a software engineer.  He worked for over twenty years with Oracle and was a Principal Network Engineer until he was fired after his arrest in this case in 2018.

Derek and his wife Nichole married in 1998.  They are the parents of three children. Katie, their oldest daughter is twenty years old and is college student in Florida.  His second oldest Alyssa is also a college student.  His youngest is Ryan, a high school student.  All three children live with their mother in a home she moved to in Florida after Derek was arrested.

Derek has a minor record of criminal offenses from when he was in high school and much younger.  This case is essentially his first offense.

Derek suffered two head injuries in recent years.  In 2015, he fell from his roof while removing ice at his house.  In 2017, he was struck in his head in an accident with a metal object. Both injuries resulted in significant head trauma.  The roofing incident required hospitalization and surgery for a collapsed lung.

In 2016, his daughter was involved in an incident at her high school that received local news coverage.  She was bullied incessantly at school and suffered depression.  In 2017, Derek

2

saw a psychiatrist to address this issue as he felt helpless and became despondent over his

daughter's plight.  His doctor prescribed him Adderall.  Derek reports that his Adderall use was

daily and that it became an addiction.  He reports that his job performance at Oracle plummeted.

He states that his use of Adderall (and probably his head injury) caused changes in his behavior

and his ability to think properly.  He has reviewed the Offense Conduct portion of the

Presentence Report, and he states that he has no memory of the sexual assaults against Minor A,

B, or C.

### Theories of Sentencing

The matter of imposing an appropriate disposition upon a defendant is a subject which has

bedeviled defendants, jurists, and scholars alike since the time of Plato.  A truly effective

disposition must take into consideration not only the interests of the defendant and his victim, but

the greater interest of the society in which the criminal offense was committed.  "Generally

speaking, there have been advanced four theories on the basis upon which society should act in

imposing penalties upon those who violate its laws.  These are:

1.  To bring about the reformation of the evildoer;
2.  To effect retribution or revenge upon him;
3.  To restrain him physically so as to make it impossible for him to commit further crimes; and
4.  To deter others from similarly violating the law."

Commonwealth v. Ritter, Court of Oyer Terminer, Philadelphia, 1939, 13D & C 285, reprinted by

Kadish and Paulsen, Criminal Law and its Processes, 3rd Edition 1975.

In a discussion on the various theories of sentencing, Judge Stern in Ritter traces the

philosophy of sentencing from its earliest time.  Citing the work of Plato, he states, "no one

punishes those who have been guilty of injustice solely because they have committed injustices,

unless indeed he punished in a brutal and unreasonable manner.  When anyone makes use of his

reason in inflicting punishment, he punishes, not on account of the fault that has passed, when no one can bring it about that what has been done may not have been done, but on account of the fault to come, in order that the person punished may not again commit the fault and that his punishment may restrain from similar acts those who witnessed the punishment." Judge Stern goes on to take note of the words of Hobbes who wrote "we are forbidden to inflict punishment with any other design than for correction of the offender, or direction of others."

Judge Stern further observed that it is the third theory of sentencing, "mainly that the restraint of the wrongdoer in order to make impossible for him to commit further crimes," that forms the first legitimate basis for sentencing. He further observed that, "if, therefore, there is a danger that the defendant may again commit crime, society should restrain his liberty until danger be passed…". Also, it is relevant, when necessary, that the court take into consideration the history of the defendant as well as the circumstances surrounding the crime with which he has been convicted.

The final objective of sentencing is that of deterrence. It may be stated that this theory holds that the punishment imposed upon a particular defendant is not to be regarded as an end in of itself but rather the means to an end; namely, deterring others from committing crime. As the theory goes, if a multiple number of prospective offenders may be dissuaded from their criminal acts by their becoming aware of the sentence imposed on a specific defendant, then society's interest in both the punishment and prevention of crime has been satisfied. Every sentencing Court has a different set of determining factors to consider; each case is unique; just as every defendant is unique. This Honorable Court's responsibility is to attempt to gain an understanding of the crimes committed and of the person charged with the commission of those crimes and then fashion a sentence that advances the cause of justice.

Sentencing Guidelines

The United States Sentencing Guidelines scheme was adopted in 1984 and has remained a helpful advisory tool for assessing appropriate punishment for offenders.  The document is a comprehensive and balanced set of guidelines that provide greater uniformity and certainty in sentencing so that victims and offenders alike understand the meaning and effect of the sentence imposed. The guidelines although advisory, intend to promote fairness and reduce disparity while preserving that degree of judicial discretion necessary to fashion the sentence appropriate for the individual offender and the specific offense.

While the guidelines serve as a fair assessment of most crimes in the federal court system, the undersigned argues that the guidelines applications of § 2G1 for this particular offense as they apply to crimes involving sexual exploitation of minors do not sufficiently distinguish between the severity of different cases and offender characteristics.   The Presentence Report calculations for this case serve as an example of how the guidelines on occasion can result in an unjust and excessive sentence.

The facts and sentencing factors in this case are that the defendant was involved in sexually assaulting three different boys who were age 11 (minor A) and 12 (Minors B and C).  The defendant in engaged in sexual contact with the three boys and each incident was videotaped.  Each of the sexual assaults occurred while the boys were sleeping at the defendant's house, during sleepovers with the defendant's son.  The defendant was thus in a supervisory role to the three boys.  The United States Sentencing Guidelines for this offense are the subject of guideline calculations referenced in the presentence report and governed by §§ 2G2.1, 2G2.2 and 4B1.5 of the Guidelines.  They include multiple enhancements from the Level 32 base offense level for the crime of sexual exploitation of a minor. Grouping of the three victims results in additional base

offense level enhancements pursuant to the grouping rules set forth in § 3D1.4 of the guidelines. Significant additional base offense levels are added pursuant to §4B1.5(b)(1).    The resulting offense level calls for a life sentence for Derek.

The defendant's criminal history score as set forth in the Presentence Report is accurate. The defendant has no record of convictions that can count towards a criminal history score and his Sentencing Guidelines criminal history designation should be Category I.

**Aggravating factors include**:

1.  The aggravating factors according to the United States Sentencing Guidelines for this offense include the age of the minor (under age 12 or over age 12); sexual contact with the minor while video recording the same (under age 12 or over age 12); and the fact that the defendant served in a parental or guardian role to the victim.

**Mitigating factors include:**

1.  The defendant essentially has no criminal record.

2.  Derek's offense conduct in this case was fueled by his Adderall abuse which included daily consumption of this mind-altering substance during the time of the offense conduct which clouded his judgment and was a primary reason that he committed these offenses.

3.  Derek's offense conduct in this case was caused by head injuries and brain trauma that he suffered in recent years, prior to the offense conduct which clouded his judgment and was a primary reason that he committed these offenses.

4.  The evidence in this case is that the three minor victims were asleep during the assaults and did not know they were sexually assaulted until the defendant was arrested and evidence revealed that the assaults were recorded by video.

5.  The evidence in this case is that the three minor victims were assaulted over clothing.

6.  The evidence in this case is that the defendant did not share video of the sexual assaults he recorded.  Indeed, there is no evidence that he subsequently viewed the videos he recorded.

7.  There is no evidence that he engaged in any internet exchange of child pornography, including the exchange of any of the videos or photographs related to this case.

8.  There is no evidence that Derek engaged in any violent actions in the charged conduct in this case or that he has a history of the same.

9.  Derek poses no threat of engaging in further criminal activity.  He appears as no danger to the community should the minimum mandatory sentence be imposed.

10. Derek has been in custody for over three years.  The last nineteen months of incarceration has been unusually harsh.  Covid-19 has forced prisons and jails to take certain measures to control the spread of the virus.  The Plymouth County Jail has been particularly hard hit by the virus with both staff and inmates suffering high numbers of infections.  While Plymouth has made good faith efforts to address Covid-19, its impact on Derek during the pandemic has resulted in either extended periods of solitary confinement or restricted lockdown.  Derek spent significant time in extended lockdown in his cell for 23 hours per day.  In addition to extended lockdown, Plymouth for much of the pandemic ended all programs, classes, recreation time and other activities to allow inmates to better themselves or some diversion.  This type of incarceration is typically reserved for inmates who violate prison rules and receive disciplinary infractions and are sentenced to the jail's disciplinary unit.

In balancing the aggravating and mitigating factors, the undersigned suggests that the lowest possible sentence the Court is authorized to give is the appropriate punishment here.

### Analysis and Discussion

To determine whether the reformation theory of sentencing applies to the case at bar, the defendant submits that this Court must scrutinize his personal history and determine whether he is a person who is capable of being reformed.  Furthermore, the court must determine the appropriate method of reform to be imposed in this case.  The defendant submits that by virtue of his age and his unique personal history he is a person who is capable of reform without the need for excessive incarceration in the Bureau of Prisons.

Despite his involvement in the criminal conduct of this case, Derek has some unique skills and attributes that have contributed to some significant personal and professional accomplishments.

With an informed grasp of the crimes he has committed, Derek will be able to conform his future conduct to the norms of society.

In summary, Derek has the personal attributes, and the essential support system provided by his family and others to live a successful and happy life. The defendant urges this Honorable Court to find that he is a person who may be reformed by the lowest sentence the Court can impose.

The defendant further urges this court to turn away from the discredited theory of retribution in determining the appropriate disposition to impose upon him.  No legitimate purpose would be served by imposing a term of incarceration which serves merely to exact revenge upon him.  The defendant, therefore, respectfully urges this court to disregard retribution in determining the appropriate disposition to be imposed.

Turning to the restraint theory of sentencing, the defendant submits that there is virtually no danger that he will again commit crime during his lifetime.  The defendant has suffered a painful lesson already during this case.  He therefore urges this Honorable Court to find that the lowest possible sentence of 15 years in prison is appropriate and will restrain him from committing further crimes.

The undersigned states that such a sentence will appropriately punish and sanction Derek and satisfy all elements of fairness and reducing disparity.

Conclusion

Derek Sheehan now submits himself to this Honorable Court for disposition.  He has the intelligence, abilities and network of support needed to again continue being a positive member of society.  He humbly asks this Honorable Court for the chance to demonstrate his worth to his community.

Respectfully submitted,
**Derek Sheehan,**
by his lawyer,

Date November 18, 2021

*William Keefe*
**William Keefe**
**BBO # 556817**
801C Tremont Street
Boston, MA 02118
Telephone: (617) 947-8483
Facsimile: (617) 445-8002

**CERTIFICATE OF SERVICE**

I, William Keefe, lawyer for the defendant, certify that I served this document on November 18, 2021, through the Court's electronic filing system (ECF) on all persons so registered.

Dated: November 18, 2021     */s/ William Keefe*