UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No:  18-CR-10391-RGS |
| ) | |
| DEREK SHEEHAN, ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

If there is a defendant who deserves to spend the rest of his life in prison, it is Derek Sheehan. Sheehan pled guilty, on the eve of trial, to sexually exploiting three children over a span of months, in his home, while his own child slept just feet away. He engaged in a course of conduct defined by depravity, calculated manipulation, premeditation, and obsession. He meticulously created an environment that, by design, was every young boy's dream—and, tragically, every parent's worst nightmare.

For the reasons discussed below and in the victim impact statements filed under seal, and for reasons to be articulated at the sentencing hearing, the government respectfully requests that this Court impose a term of incarceration of 720 months (60 years) and 60 months (5 years) of supervised release.

**FACTS**

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 6 through 14 of the Presentence Investigation Report ("PSR"). This Court is well aware of the facts of this case, having denied the defendant's motions to suppress (ECF 57, 58) and having allowed the government's motion *in limine* to admit evidence of other child molestation (ECF 108), filed in the weeks leading up to the July 2021 trial of this matter.

Essentially, Sheehan lured children into his home so that he could sexually abuse them and preserve that abuse on video. Sheehan acted with intent and purpose, methodically sexually assaulting his son's friends while they slept in his office, which he had curated as the space where his son and son's friends would want to, and did, spend a large amount of their time, including the hours when they slept at night. He took full advantage of those hours; he literally sexually assaulted these 11- and 12-year-old boys for hours at a time, and he took pains to ensure that the videos actually captured the abuse – at times checking and adjusting the angle of the camera situated high on a shelf, and at least one time even turning to make sure the camera caught him masturbating after he had sexually assaulted one of the boys.

Law enforcement was able to recover these videos of Sheehan's sexual assault of Minors A, B, and C only after Minor A came forward to report Sheehan's sexual assault of him while the child vacationed with Sheehan, Sheehan's family, and another friend on Cape Cod. This brave act encouraged another victim, Minor D, to come forward to report sexual abuse that was not caught on camera because Sheehan assaulted the child while he was sleeping on a couch in Sheehan's living room.

Sheehan describes himself as "an awesome dad." PSR 100. But in reality, he perverted that role and converted it to a means to an end. Sheehan's violation of these children went beyond the sexual abuse he recorded on video. He carefully manipulated these kids—and their parents—to make sure he had an astounding level access to his child victims. He secretly monitored their phone conversations. He gave them marijuana. He fabricated emails and police reports in effort to conceal his criminal conduct. The scope of this conduct is breathtaking and terrifying.

## DISCUSSION

**I.      Sentencing Guideline Calculation and Restitution**

Based on its computation of the defendant's total offense level as 43 and his criminal history category as I, the United States Probation Office ("Probation") has computed a Guidelines sentence in this case to include a term of incarceration for life; the Guidelines range of supervised release is five years to life.

The government agrees with Probation's calculation of the defendant's Offense Level and Criminal History Category, and thus agrees with its determination of his Guidelines Sentencing Range (GSR) as outlined above.

As correctly noted in the PSR, the government opposes a third-point reduction for acceptance of responsibility under § 3E1.1(b). As that subparagraph states, the additional one-point reduction is only appropriate where the defendant's "timely" plea "permit[s] the government to avoid preparing for trial." Sheehan very clearly does not meet that requirement.

After scheduling, and then canceling, multiple change of plea hearings in this case, Sheehan finally entered a guilty plea less than 10 days before trial. At that point, the government had already conducted multiple meetings with child victims and witnesses, and their families, to prepare for the impending trial. This subjected Sheehan's victims to further trauma. *See United States v. Lacouture*, 835 F.3d 187, 192 n.6 (1st Cir. 2016) (holding that "recounting a sex crime can be a traumatic experience" and "this hardship is compounded when the victim is a child"). By the time Sheehan pled guilty on the eve of trial, the government and the minor victims had already invested significant resources (both temporal and emotional) to prepare for trial.

Moreover, while Sheehan pled guilty, he has by no means accepted responsibility for his heinous crimes or the obvious impacts of those crimes on his victims and their families. As noted

below, in advancing an argument for the minimum possible penalty, Sheehan claims that his actions—which he allegedly does not remember—were somehow the result of some head injury or an Adderall addiction. This is plainly offensive and categorically unbelievable, given that investigators discovered over 20 hours of video footage of the abuse. Sheehan cannot be rewarded with extra credit for his supposed acceptance of responsibility and must be denied the so-called "third point."

II.     **Application of the Section 3553(a) Factors**

Based on an evaluation of all of the § 3553(a) factors, the government believes that its recommended sentence appropriately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense; affords adequate deterrence to criminal conduct; and protects the public.

The government recognizes that it is difficult to quantify exactly how many months would satisfy the Court's obligation to impose a sentence that achieves these goals of sentencing. It goes without saying that a significant sentence is necessary to reflect the gravity of the defendant's crimes. But this is not a case where there should be any question about how long the defendant needs to be imprisoned: for the rest of his life. This is a defendant who demonstrates, even in the days leading up to sentencing, a shocking refusal or inability to accept responsibility and a chilling lack of remorse. The extent to which Sheehan went to condition his victims and their families against any belief that he was a person who could or would do something like this betrays an almost pathological level of manipulation.

Here, the defendant sexually abused at least four children entrusted to his care over a period of time, which ended only because one of the victims was brave enough to speak up. The facts here portray a shockingly callous picture of the defendant's predation. Forensic analysis cannot

tell us, in this case, when the defendant first started abusing these children – but common sense tells us that it is exceedingly unlikely that the imagery discovered after Sheehan *knew* he was being investigated just happened to be the first time. The preparation for and execution of the abuse was simply too practiced and perfected for it not to have happened prior to the time period charged in the indictment. This is relevant, of course, because it informs the Court's view of Sheehan's capacity for rehabilitation. Furthermore, experience in prosecuting, defending, and adjudicating federal child exploitation cases tells us that it is almost certain that the victims here will be dealing with the consequences of the defendant's depravity for years to come.

What is also certain is that this is not a case that merits the imposition of the minimum possible sentence. Sheehan laments that the "case has defined him and it is a 'life ender.'" PSR 100. First, this perspective perfectly illustrates Sheehan's inability or refusal to accept responsibility for his actions. This case did not just happen to him; he made a series of intentional, manipulative, well thought out decisions for the sole purpose of satisfying his depravity.

Second, the outcome that he laments is the outcome that he deserves. In other cases involving hands-on offending by defendants charged with violations of 18 U.S.C. § 2251, courts have imposed sentences more reflective of the seriousness of such offenses than what the defendant here proposes. *See*, *e.g.*, *United States v. Decarolis*, 19-cr-40038-TSH (defendant who produced child pornography involving five minors sentenced to 38 years); *United States v. Lee*, 18-cr-10105-IT (defendant who used messaging application to direct New Hampshire male to produce specific child pornography depicting sexual abuse of child known to that person sentenced to 20 years; defendant who sexually abused the child in producing the material sentenced to 50 years in D.N.H. in 18-cr-00004-LM); *United States v. Anthony DeOrdio*, 18-cr-30056-MGM (defendant who created child pornography depicting sexual abuse of one child known to him after having been

previously convicted of a child pornography offense sentenced to 50 years); *United States v. Jonathan Monson*, 18-cr-30015-MGM (defendant who created child pornography depicting sexual abuse of one child known to him sentenced to 40 years); *United States v. Toronto*, 17-cr-10307-FDS (defendant who produced child pornography depicting sexual abuse of two children known to him sentenced to 40 years); *United States v. Germaine*, 17-cr-30010-ADB (defendant who created child pornography depicting sexual abuse of one child known to him sentenced to 35 years pursuant to plea agreement); *United States v. Jason Gendron*, 13-cr-30036-WGY (defendant who created child pornography depicting sexual abuse of four children in his care sentenced to 50 years pursuant to plea agreement contemplating range of 40-50 years).

Here, the government is recommending a below-Guideline sentence not in recognition of any mitigating factors (there are none), but rather to account for his age and sentences imposed for defendants convicted of similar conduct. The recommended sentence is entirely reasonable and warranted in this case, notwithstanding the fact that it is, objectively, quite high. As outlined in the PSR and above, Sheehan embarked on an abhorrent course of conduct rooted in the predation of children he knew would not tell – either because they didn't know it was happening or because they had shown him that they wouldn't tell. Every time he got away with touching or raping a child, using his mouth or his hands, it empowered him to keep going. The pain and devastation that he left in his wake will, hopefully for the families whose lives he upended, dissipate over time. The videos he created will last forever. The foreseeable consequences of this persistent predation include an amount of time in prison commensurate with the nature and circumstances of his offense and the need to prevent him from ever doing it again. Here, that amount of time is decades, even if that means the rest of his life.

The government has considered the defendant's history and characteristics, as they are outlined in the defendant's sentencing memorandum. That consideration, along with consideration of the defendant's misinformed analysis of the nature and circumstances of the offense, frankly, leads the government to believe that something *higher* than its recommendation might be appropriate. For example, relying on an undiagnosed head injury to support a specious claim that "his use of Adderall (and probably his head injury) caused changes in his behavior and his ability to think properly" is, in a word, offensive. It is not only *not* supported by any medical or scientific authority or documentation, but it is utterly impossible to accept, given the systematic, methodical, protracted, multifaceted, and conniving nature of the offenses. Furthermore, to suggest that it should mitigate in his favor that a) he raped and indecently assaulted young children in his care while they *slept* or b) these sexual assaults are somehow less serious because they were sometimes committed using shorts as a barrier to skin-to-skin contact flies in the face of reason.

This is one of the worst crimes that is prosecuted in federal court. It should be treated as such. There is no reason to believe that anything but a lengthy term in prison (which, for Sheehan, amounts to the rest of his life, based on his age) will deter this defendant and others from committing similar offenses in the future. Regardless of what led the defendant to capitalize on the vulnerability of the victims in this case, the harm perpetrated on those victims is the same. Similarly, the fact that the defendant comes before this Court with no prior record is not a mitigating factor in the context of these offenses. The defendant's record was taken into consideration in the calculation of his criminal history category. *See, e.g., United States v. Oberg*, 877 F.3d 261 (7th Cir. 2017) (district judge properly noted that defendants in child pornography cases often have limited criminal histories).

The government recognizes that it is always difficult to quantify in months or years how much is "sufficient" to achieve the goals of sentencing. In this case, that calculus leads to a term of years that will incapacitate Derek Sheehan forever. While the government's recommended sentence here is significant in length, it is not only reasonable, but also necessary in this case to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same ways again, and for long-term protection of the public.

## CONCLUSION

For all of the foregoing reasons, the government respectfully recommends that this Court impose a sentence of 60 years' imprisonment, to be followed by five years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully Submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

Date: November 19, 2021    By:    /s/ Anne Paruti_____
Anne Paruti
Charles Dell'Anno
Assistant United States Attorneys
United States Attorney's Office
One Courthouse Way
Boston, MA 02210
617-748-3100

**CERTIFICATE OF SERVICE**

I, Anne Paruti, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participant as identified on the Notice of Electronic filing:


Date: November 19, 2021              /s/ Anne Paruti
                                     Anne Paruti
                                     Assistant United States Attorney